### JACOT et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. January 9, 1895.)

#### No. 59.

CUSTOMS DUTIES—MUSIC BOXES.

Music boxes, small in size, of inferior quality, playing less than six tunes, not musically accurate, wound up with a key permanently affixed to the outside of the box, easily operated by a child, and costing 8.35 francs or less each, are dutiable as toys, under paragraph 436 of the tariff act of October 1, 1890.

This is an appeal by importers from a decision of the United States circuit court for the Southern district of New York, entered on May 16, 1894, affirming the decision of the board of United States general appraisers, which affirmed the decision of the collector of the port of New York in the classification for customs duty of certain "music boxes" as "manufactures of metal," under paragraph 215 of Schedule C of the tariff act of October 1, 1890. That paragraph imposed a duty of 45 per cent. ad valorem. The importers claimed that the goods were "toys," and dutiable, under paragraph 436 of said act, at 35 per cent. ad valorem.

Albert Comstock, for appellants.

Wallace Macfarlane, U. S. Atty., and Henry C. Platt, Asst. U. S. Atty.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The appeal in this case brings up only the decision of the collector which was the subject of protest, and calls for a ruling only as to the articles included in the invoices covered by such protests. Upon the hearing in the circuit court a large number of samples of music boxes of different sizes and grades were put in evidence, which need not be now considered. The protests upon which this appeal is based covered importations by the Westernland, La Touraine, La Gascoigne, and La Bretagne. The importer testified before the board of appraisers that, of the music boxes imported by the Westernland, part were turned with a crank and part were wound up by a key. Those turned with a crank the board held to be toys, an opinion approved by the circuit court. No one questions the accuracy of that decision. A sample marked "Exhibit No. 1" was identified as being a fair representative of the goods on the invoices per Westernland, which were operated by winding with a key; the importer testifying that the music boxes on these invoices were identical "in style" in every way with the sample, being a little cheaper and less in size than Exhibit No. 1, and playing a less number of tunes. The highest-priced music boxes on the invoices resembling the sample were worth 8.35 francs each; others thereon were cheaper. The importer claimed that these music boxes, winding with a key, were also toys. He further testified that, upon the invoices per La Touraine, the only music boxes which he claimed to be toys were those like Exhibit No. 1, only smaller and playing a less number of tunes, and costing 5.45 francs or less; that on the invoices by La Gascoigne and La Bretagne there were no "toy" music boxes. The board of general appraisers had before it another sample (Exhibit No. 2) of a larger and more expensive box, but there is no evidence to show that any such boxes were included in these importations, nor in the protests thereon. Upon the taking of proofs in the circuit court, an effort was made to introduce some question as to the classification of other samples there presented; but the witness called to identify them, while satisfactorily proving that they were samples of goods imported by Jacot & Son, failed to prove that music boxes like them were imported by the Westernland and La Touraine. It

is manifest, therefore, that the only question properly before that court was as to boxes winding with a key, identical in style with Exhibit No. 1, and costing, some 8.35 francs, some 5.45 francs, and some less. The board of appraisers held that the boxes turned with a crank, and costing 5.45 francs and under, were designed for and chiefly used as children's playthings, but that the boxes like Exhibit No. 1, which they describe as "small spring boxes, wound with a key, costing about 8.35 francs each, * * * playing six tunes, and the boxes being of mahogany, inlaid," are not specially adapted nor designed for the amusement of children, and that they are not used, nor suitable to be used, by children as playthings. The sole test they applied was the means employed for operating the boxes, on the theory that, because the "turning of a crank affords occupation and amusement to a child," boxes thus operated are toys, while boxes not thus operated would not be "suitable to be handled as playthings." This distinction commended itself to the learned judge who heard the case at circuit. Undoubtedly it would be a most convenient criterion for determining the classification of music boxes, but, in our opinion, it is an arbitrary distinction not warranted by the proofs. While a small, cheap music box, playing a few simple tunes inaccurately, and operated by turning a crank, would be a suitable plaything for a child two or three years old, and intelligent enough to turn the crank, we fail to see how it can be maintained that another box, wound up by a key, which is of like cost, of like grade of workmanship, and plays the same tunes, in the same way, would not be a suitable plaything for a child six or seven years old, who manifestly could wind it up unaided, and listen to the music thus produced. Many witnesses were examined, but the evidence wholly failed to show that there was any special trade-meaning of the word "toy." One witness testified that in his opinion every music box which is worked either by a crank or key is a toy, whereas all which are worked by a lever are not. But this distinction will not answer, since the evidence shows that many very expensive boxes, intended solely for adults, are wound with a key. All the other witnesses agreed in the statement that in their opinion the cheaper boxes, which do not produce music accurately enough to give enjoyment to an adult, and which are made, as one witness testified, by mere apprentices, not by skilled workmen, are regarded by them as toys. But they do not agree as to the limit of price which is the dividing line. Some of them make it as high as 25.25 francs, but none of them make it lower than 15 francs. Moreover, it appears that the toy dealers handle expensive music boxes, and that the so-called "toy" boxes are sold to others than toy dealers. The true test to be applied is best stated by one of the witnesses: It is "the quality of the instrument, which is governed by the price, largely." Applying this test to the only instruments properly now before this court for classification, they are found to be small in size, of inferior quality, playing less than six tunes, not musically accurate, wound up with a key permanently affixed to the outside of the box, easily operated by a child, and costing 8.35 francs or less each. These, in

our opinion, should be classified for duty as toys. The judgment of the circuit court is reversed, and the case remitted, with directions to classify the merchandise as above indicated.